UNITED STATES *v.* FURUYA (No. 2972)[1]

United States Court of Customs Appeals, December 5, 1927

*Charles D. Lawrence,* Assistant Attorney General (*Thomas J. Canty,* special attorney, of counsel), for the United States.
*F. L. Lawrence* for appellee.

[Oral argument October 4, 1927, by Mr. Charles D. Lawrence]

Before GRAHAM, Presiding Judge, and SMITH, BLAND, and HATFIELD, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

Appellee made an importation of English-Japanese dictionaries at the port of Portland, Oreg. These were classified by the collector under paragraph 1310 of the Tariff Act of 1922 as "printed books, leather bound, not chiefly foreign," at 25 per centum ad valorem, and as "printed books, cloth bound, not chiefly foreign," at 15 per centum ad valorem. The importer protested, claiming the books to be free as books printed chiefly in a foreign language, under paragraph 1529 of said act, or as unenumerated manufactured articles under paragraph 1459, or by similitude under paragraph 1460 thereof. On the hearing before the court below, counsel for the importer stated, "I offer in evidence the official sample." It was thereupon admitted in evidence and upon this sample the cause was submitted by both sides. The court below sustained the protest under said paragraph 1529. From the resulting judgment the Government has appealed.

The pertinent portions of the statute are as follows:

1310. Unbound books of all kinds, bound books of all kinds except those bound wholly or in part of leather, * * * all the foregoing not specially provided for, if of bona fide foreign authorship, 15 per centum ad valorem; all other, not specially provided for, 25 per centum ad valorem.

---

[1] T. D. 42492.

1529. Books and pamphlets printed wholly or chiefly in languages other than English.

The question of the proper classification of the paper-bound books was not properly before the court below nor can it be considered on its merits by this court. The collector classified them at 15 per centum under the first clause of said paragraph 1310, which is tantamount to a finding that they were books bound, not wholly or in part of leather, and of *bona fide* foreign authorship. There is nothing to impeach this finding, no evidence having been offered or sample submitted. The classification of the paper-bound books, therefore, must stand.

The sample of the leather-bound books submitted to us is a small morocco bound, pocket size volume, bearing this inscription upon the cover, "Inouye's Handy English-Japanese Dictionary." The first title-page repeats this title in English and Japanese. The second title-page is a "Foreword," in English. Following these are eight pages of explanatory matter, in Japanese and English. Then follow 938 pages, constituting the dictionary proper, consisting of a list of English words, followed by their respective Japanese equivalents. Following these are four pages of tables of weights and measures, in English and Japanese. Two pages of Japanese characters follow. The superscriptions and page numbers throughout the book are in English.

Inasmuch as the importer attacked the classification made by the collector, it was incumbent upon him to show not only that the goods were not properly classified by the collector as books, not specially provided for under said paragraph 1310, but that they were properly classifiable as books printed wholly or chiefly in languages other than English, as provided by said paragraph 1529. We are of opinion the importer has failed to maintain this burden by the introduction of the sample. The best that might be said in support of appellee's contention, on inspection of the sample, would be that the foreign language and English components are evenly balanced. In fact, if any component element prevails, it is the English language component. The case therefore comes clearly within the rule announced in *United States* v. *Petry Co.,* 11 Ct. Cust. Appls. 240 T. D. 39019.

The court below sustained the protest of the importer on the theory announced in the special concurring opinion of Smith, J., in *United States* v. *Petry, supra,* holding that the chief worth or value to the reader of the books now before us is the foreign language component thereof. We have, however, in the recent case of *United States* v. *Nelson & Sons,* 15 Ct. Cust. Appls. 268, T. D. 42465, refused to give our approval to the rule so announced.

The imported articles being specifically named in said paragraph 1310, no claim can be sustained under either paragraph 1459 or 1460.

For the reasons above given the judgment of the Customs Court is reversed and the cause remanded with directions to overrule the protest.

*Reversed* and *remanded.*

BARBER, J., did not participate in this case.

### DISSENTING OPINION

SMITH, Judge: I regret that I am not in accord with the prevailing opinion. On the hearing before the United States Customs Court no evidence was introduced other than the official sample. The sample in evidence establishes that it is printed in English words alphabetically arranged and in Japanese ideographs. The book furnishes no definitions whatever of English words, and is consequently useless as an English dictionary.

It is admitted by the Government that the work is primarily designed for an English reading and speaking people and that it is so arranged that an English-reading person could easily find the corresponding Japanese word and meaning. That admission, of course, necessarily implies that the English-speaking person can not use the dictionary unless he understands the signification of the Japanese ideographs. It is further admitted that a person speaking and writing Japanese only could not find in the dictionary the corresponding English word or its meaning. As the dictionary is indexed in English and is not indexed in Japanese, it follows that it would be utterly worthless to a Japanese person either as an English dictionary or as a Japanese dictionary.

The Government contends that the work is printed mainly and chiefly in English words and is not printed chiefly in a foreign language. If by that contention the Government means to say that the work contains more English print than Japanese print, it is completely answered by the sample, the examination of which discloses beyond the peradventure of a doubt that it contains more Japanese print than English print. The space occupied by the Japanese print far exceeds the space taken up by the English print. Taking page 288, selected at random, as a fair sample of language prints in the book, the Japanese ideographs are nearly five times greater in number than the English words and abbreviations.

Unquestionably the dictionary would be chiefly used by English-reading and English-speaking people, but it would not be and could not be used by them as an English dictionary and is valueless for any English-reading or English-speaking purpose. The chief value and

334

worth of the book is the Japanese content, which would be useful to English-speaking students of the Japanese language and to students and scientists who make a specialty of sign, picture, or symbol writing.

As an examination of the sample in evidence discloses that most of the print is in Japanese and as the chief value and worth of the work to the American people is the Japanese content thereof, it is evident that whatever meaning is given to the phrase "printed chiefly in languages other than English," the importation is entitled to free entry under paragraph 1529. To hold otherwise would, in my opinion, render inoperative the first provision of that paragraph.

In my opinion the judgment of the United States Customs Court should be affirmed.